KASSRA P. NASSIRI (215405)
(knassiri@nassiri-jung.com)
CHARLES H. JUNG (217909)
(cjung@nassiri-jung.com)
NASSIRI & JUNG LLP
47 Kearny Street, Suite 700
San Francisco, California 94108
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

MICHAEL J. ASCHENBRENER
(maschenbrener@edelson.com)
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

E-filing

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NANCY WALTHER GRAF, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZYNGA GAME NETWORK, INC., a Delaware corporation,<br><br>Defendant. | Case No. CV 10 4680<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT**<br><br>ACTION FILED: 10/18/10<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nancy Walther Graf ("Plaintiff") bring this suit on behalf of herself and all others similarly situated, and make the following allegations on information and belief, except as to allegations pertaining to Plaintiff, which are based on her personal knowledge:

## I. INTRODUCTION

1. Plaintiff bring this class action complaint against Zynga Game Network, Inc. ("Zynga") for sharing its users' sensitive personally identifiable information ("PII"), including users' real names, with Zynga's advertising partners and internet marketing companies, in violation of Zynga's agreement with Facebook, Inc., accepted industry standards, and state and federal law.

-1-

CLASS ACTION COMPLAINT

2. Unbeknownst to Zynga users, and in violation of Zynga's agreement with Facebook, Inc. and privacy laws, Zynga intentionally and knowingly transmitted PII, including users' real names, to third party advertisers and internet marketing companies without user consent and for a substantial profit.

## II. PARTIES

3. Plaintiff Nancy Walther Graf is a resident of Ramsey County, Minnesota. She is a registered user of Zynga's services and has used the Farmville application owned, operated and offered by Zynga. During the relevant time period, Plaintiff Graf used the Farmville application.

4. Defendant Zynga Game Network, Inc. ("Zynga") is a Delaware corporation that maintains its headquarters in San Francisco County, California. Zynga conducts business throughout California and the nation.

## III. JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Zynga because (a) a substantial portion of the wrongdoing alleged in this complaint took place in this state, (b) Zynga is authorized to do business here, has sufficient minimum contacts with this state, and/or otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of products and services in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and 1332(d) because the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, and more than two-thirds of the users of the putative class are citizens of states different than that of Zynga. Additionally, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c). A substantial portion of the events and conduct giving rise to the violations of law complained of herein occurred in this District. Zynga's principal executive offices and headquarters are located in San Francisco County, California.

## IV. INTRADISTRICT ASSIGNMENT

8. Intradistrict assignment to the San Francisco Division is proper because the principal offices of defendant Zynga are located in San Francisco County.

## V. STATEMENT OF FACTS

### A. About Zynga

9. Defendant Zynga is one of the largest providers of Facebook, Inc. ("Facebook") social applications. Zynga makes and offers social games that are free and accessible to Facebook users. Zynga's most popular games, Farmville, Texas HoldEm, FrontierVille, Café World, Mafia Wars, and Treasure Isle, are offered by and through Facebook to Facebook users and have over 59 million Facebook users.

10. In order to play any Zynga game on Facebook, Zynga requires Facebook users to register a profile with Zynga. In particular, Zynga requires its users to submit their name, address and gender in order to play its games.

11. Zynga uses third-party advertising companies to serve ads on its Facebook gaming applications and enjoys substantial profits therefrom.

12. Zynga also profits from its users by selling them "virtual currency" that they can use to purchase "virtual items" in Zynga games. For example, Zynga users use "virtual currency" to buy virtual tractors and other virtual goods within the Farmville application.

### B. Plaintiff is a Third-Party Beneficiary of Facebook's Terms and Conditions Governing Zynga

13. Because Facebook users share so much information through Facebook, Facebook places certain restrictions on its third-party application developers like Zynga to protect Facebook user's personally-identifiable information. Plaintiff is unaware at this time whether Facebook takes any or reasonable steps to enforce its terms and conditions against third-party application developers like Zynga.

14. Facebook's terms and conditions prohibit third parties, such as Zynga, who create applications offered on Facebook from transferring data about Facebook users to outside advertising and data companies, even if a user agrees to do so. Facebook prohibits its application developers from "include[ing] functionality that proxies, requests or collects Facebook usernames or

passwords" and from "directly or indirectly transfer[ring] any data you receive from us to (or use such data in connection with) any ad network, ad exchange, data broker, or other advertising related toolset, even if a user consents to such transfer or use." Facebook also prohibits its developers from using "a user's friend list outside of your application, even if a user consents to such use." All users of Zynga's Facebook applications are intended third-party beneficiaries of Facebook's agreement with Zynga.

### C.     Zynga Violates Its Facebook's Terms and Conditions

15.     In direct violation of its agreement with Facebook, Zynga shares its users' information with third-party advertisers and internet marketing companies without users' knowledge or consent.

16.     According to a *Wall Street Journal* article published on October 18, 2010, Zynga caused the names of its users of Facebook applications, such as Farmville, to be transmitted to third parties, including advertisers and internet marketing companies, without user consent. Zynga transmitted its users' personally identifiable information to these third parties for substantial profit.

17.     When a Zynga user clicks on an advertisement displayed on a Zynga game, such as Farmville, Zynga sends a "Referrer Header" to the corresponding advertiser. The Referrer Header reveals the specific web page address the user was viewing prior to clicking the advertisement. Through the design of the Zynga applications, Zynga has caused users' browsers to send Referrer Header transmissions that report the user ID or username of the user who clicked an ad, as well as other personally-identifiable information.

18.     When a Zynga advertiser receives a Referrer Header reporting the user who clicked an ad, the advertiser can obtain substantial additional information about the user, such as the user's Facebook ID and name. The advertiser can then navigate to that user's Facebook or Zynga profile, where it can obtain even more personally-identifiable information of that user, including gender, picture, friends, networks, wall posts, photos, and more. Alternatively, an advertiser can design software to automatically collect and store this data as to each user who clicks an ad. However the advertiser elects to obtain this information, Zynga does nothing to prevent the advertiser from using the information for whatever purpose the advertiser chooses.

19. Upon information and belief, Zygna also caused its users' personally-identifiable information to third-party data gathering companies. These data gathering companies transmit that personally-identifiable information to other third parties for profit.

## VI. CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action on behalf of herself and all other persons in the following similarly-situated class: ***all registered users of Facebook.com in the United States who, at any time after October 18, 2006 registered a profile with Zynga*** (the "Class"). Excluded from the Class are Zynga, its officers and directors, legal representatives, successors or assigns, any entity in which Zynga has or had a controlling interest, the judge to whom this case is assigned and the judge's immediate family.

21. The Class is composed of numerous people, whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit Class members, the parties and the courts. Upon information and belief, Zynga has over 50 million users and there are millions of persons in the Class.

22. Upon information and belief, the identities and contact information of the individual members of the Class are available through Zynga's electronic records.

23. There is a well-defined community of interest in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class members, including, but not limited to, the following:

   a. whether Plaintiff and the Class are intended third-party beneficiaries of Facebook's agreement with Zynga not to divulge personally-identifiable information;

   b. whether Zynga violated its agreement with Facebook by making its users' personal information and advertisement click information available to advertisers and third parties without authorization;

   c. what and how personally-identifiable data and advertisement click information was transmitted to advertisers and other third parties;

d. whether Class members are entitled to damages as a result of Zynga's conduct, and, if so, what is the measure of those damages;

e. whether Zynga's conduct described herein violated the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* (the "ECPA");

f. whether Zynga's conduct described herein Stored Communications Act, 18 U.S.C. § 2701 *et seq.*(the "SCA");

g. whether Zynga's conduct described herein violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

h. whether Zynga's conduct described herein violated California's Computer Crime Law (Cal. Penal Code § 502);

i. whether Zyga's conduct described herein violated the California Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*);

j. whether Zynga's conduct described herein constitutes a breach of contract; and

k. whether Zynga was unjustly enriched as a result of its conduct described herein.

24. Zynga engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class members. Similar or identical statutory and common law violations, business practices and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate.

25. The injuries sustained by members of the Class flow, in each instance, from a common nucleus of operative facts. In each case, Zynga caused or permitted unauthorized communications of private and personally identifying information to be delivered to third parties without adequate or any notice, consent or opportunity to opt out.

26. Given the similar nature of the Class members' claims and the absence of material differences in the statutes and common laws upon which the Class members' claims are based, a nationwide class will be easily managed by the Court and the parties.

27. Because of the relatively small size of the individual Class members' claims, no Class user could afford to seek legal redress on an individual basis.

28. Plaintiff' claims are typical of those of the Class as all members of the Class are similarly affected by Zynga's uniform and actionable conduct as alleged herein.

29. Zynga has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

30. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to, or in conflict with, the Class that Plaintiff seek to represent.

31. Plaintiff reserves the right to revise the above class definition based on facts learned in discovery.

## COUNT I
### (Violation of the Electronic Communications Privacy Act)

32. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

33. The Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* (the "ECPA") broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in party by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce..." 18 U.S.C. § 2510(12).

34. Pursuant to the ECPA, Zynga operates an "electronic communications service" as defined in 18 U.S.C. § 2510(15). Zynga provides its users with the ability to send or receive electronic communications to or from many of Zynga's millions of users and to or from third parties who are not Zynga users, such as advertisers. Zynga also provides its advertisers the ability to send electronic communications to Zynga users by placing targeted advertisements on Zynga's applications, and allows Zynga users to receive those electronic communications and send electronic communications to advertisers by clicking on advertising banners.

35. The ECPA broadly defines the contents of a communication. Pursuant to the ECPA, "contents" of a communication, when used with respect to any wire, oral, or electronic communications, include any information concerning the substance, purport, or meaning of that communication. 18 U.S.C. § 2510(8). "Contents," when used with respect to any wire or oral

communication, includes any information concerning the identity of the parties to such communication or the existence, substance, purport, or meaning of that communication. The definition thus includes all aspects of the communication itself. No aspect, including the identity of the parties, the substance of the communication between them, or the fact of the communication itself, is excluded. The privacy of the communication to be protected is intended to be comprehensive.

36. The ECPA prevents an electronic communications service provider from intentionally divulging the contents of any communication while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication. 18 U.S.C. § 2511(3)(a).

37. Plaintiff and Class members are "person[s] whose ... electronic communication[s] [are] disclosed... or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520(a).

38. By clicking on an advertisement banner displayed on Zynga applications, users are asking Zynga to send an electronic communication to the advertiser who supplied the ad. But pursuant to Zynga's agreement with Facebook, users do not expect and do not consent to Zynga's disclosure of all contents of that communication. Zynga users expect that certain aspects of their communications concerning advertisers—namely their identities—will be configured by Zynga to be private.

39. The design of the Zynga's applications and Zynga's agreements to provide user data to third-parties are evidence of Zynga's conscious objective to divulge the identities of its users to advertisers and other third parties. By divulging user identities and other user information to third parties without user consent, Zynga intentionally violated 18 U.S.C. § 2511(3)(a). Zynga intentionally disclosed user identities to third parties to enhance its profitability and revenue through advertising. This disclosure was not necessary for the operation of Zynga's system or to protect Zynga's rights or property.

40. Each incident in which Zynga divulged personally identifiable information of a Zynga user is a separate and distinct violation of the ECPA. Plaintiff and members of the Class therefore seek remedy as provided for by 18 U.S.C. § 2520, including such preliminary and other

equitable or declaratory relief as may be appropriate, damages consistent with subsection (c) of that section to be proven at trial, punitive damages to be proven at trial, and attorneys' fees and other litigation costs reasonably incurred.

41. Plaintiff and the Class, pursuant to 18 U.S.C. § 2520(2), are entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 a day for each day of violation, actual and punitive damages, reasonable attorneys' fees, and Zynga's profits obtained from the violations described herein.

### COUNT II
### (Violations of the Stored Communications Act)

42. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

43. The Stored Communications Act of 1986 ("SCA") incorporates the ECPA's definition of an "electronic communication service." 18 U.S.C. § 2711(1). As set forth above, Zynga is an electronic communications service provider within the meaning of the ECPA and is therefore also subject to the restrictions contained in the SCA governing electronic communications service providers.

44. The SCA also incorporates the ECPA's broad definition of "electronic communication" and "electronic storage." 18 U.S.C. § 2711(1). Pursuant to the ECPA and SCA, "electronic storage" means any "temporary storage of a wire or electronic communication incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17)(A). This type of electronic storage includes communications in intermediate electronic storage that have not yet been delivered to their intended recipient.

45. Examples of communications held by Zynga in temporary storage pursuant to 18 U.S.C. § 2510(17)(A) include private messages and posts not yet received by the intended recipient and user requests to Zynga to visit advertiser websites.

46. The SCA prohibits any electronic communications service provider from divulging to any person or entity the contents of a communication while in electronic storage by that service. 18 U.S.C. § 2702(a)(1).

47. When a Zynga user clicks on an ad, the user is asking Zynga to send an electronic communication to that advertiser allowing the user to view the advertiser's website. By clicking an

ad, the Zynga user also tells Zynga, via an electronic communication, who the user is, what web page the user is viewing, and where the user wants to go. This information is held in temporary storage by Zynga pending the delivery of the user's request to the advertiser website. By divulging to third parties the user's identity and what page they were viewing, Zynga violated 18 U.S.C. § 2702(a)(1).

48. The design of the Zynga's applications and Zynga's agreements to provide user data to third-parties are evidence of Zynga 's conscious objective to divulge the identities of its users to advertisers and other third parties. By divulging user identities and other user information to third parties without user consent, Zynga intentionally violated 18 U.S.C. § 2702(1)(a). Zynga intentionally disclosed user identities and other information to third parties to enhance its profitability and revenue through advertising. The disclosures were not necessary for the operation of Zynga's systems or to protect Zynga's rights or property.

49. The SCA definition of "electronic storage" also includes "storage of [a wire or electronic] communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17)(B). The personally-identifiable information that Zynga users send via electronic communications to Zynga, such as their name, is electronically stored by Zynga for backup purposes. The user's personally-identifiable information, once registered with Zynga, remains available for viewing and re-access at a later time by the user and other persons authorized by the user to access that information. This storage is one of the main services that Zynga provides to its users.

50. Because Zynga thus operates as a "virtual filing cabinet" for its users, allowing them to store and re-access that information at a later time, Zynga is also a "remote computing service" provider pursuant to 18 U.S.C. § 2711(2).

51. The SCA, at 18 U.S.C. § 2702(a)(2), provides that "a person or entity providing an remote communication service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carrier or maintained on that service (A) on behalf of, and received by means of electronic transmission…a subscriber or customer of such service; (B) solely for the purpose of providing storage…to such subscriber or customer, if the provider is not

authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing."

52. As a result of Zynga's disclosure of user identities, Zynga gives unauthorized access to and thereby divulges electronically-stored information to third parties about its users. With the user name that Zynga provides them, for example, third parties can navigate to a user's Facebook or Zynga profiles and see a user's stored electronic communications, including names, gender, pictures, friends, networks, wall posts, photos, and more. Because Zynga is both an electronic communication service provider and a remote computing service provider, Zynga's disclosure of this information to third parties is in violation of both 18 U.S.C. § 2702(a)(1) and (2). As set forth above, Zynga's disclosures were knowing and intentional and designed to enhance its profitability and revenue through advertising. The disclosures were not necessary for the operation of Zynga's system or to protect Zynga's rights or property.

53. Zynga intentionally and knowingly divulged confidential and private information relating to Plaintiff and Class member' stored electronic communications without the consent, knowledge or authorization of Plaintiff and members of the Class.

54. Plaintiff and Class members are "person[s] aggrieved by [a] violation of [the SCA] in which the conduct constituting the violation is engaged in with a knowing or intentional state or mind..." within the meaning of 18 U.S.C. § 2707(a).

55. Each incident in which Zynga provided personally identifiable information of a user, thereby divulging that user's stored communications to a third party, is a separate and distinct violation of the SCA, subject to the remedies provided under the SCA, and specifically pursuant to 18 U.S.C. § 2707(a).

56. Plaintiff and users of the Class therefore seek remedy as provided for by 18 U.S.C. § 2707(b) and (c), including such preliminary and other equitable or declaratory relief as may be appropriate, damages consistent with subsection (c) of that section to be proven at trial, punitive damages to be proven at trial, and attorneys' fee and other litigation costs reasonably incurred.

57. Plaintiff and the Class, pursuant to 18 U.S.C. § 2707(c), are entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of no less than $1,000 per

violation, actual and punitive damages, reasonable attorneys' fees, and Zynga's profits obtained from the violations described herein.

## COUNT III
### (Violation of Cal. Bus. & Prof. Code § 17200)

58. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59. California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

60. The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law.

61. As described herein, Zynga's nonconsensual disclosure of its users' personal information to third parties without their authorization is a violation of the UCL.

62. Zynga has violated the "unlawful" prong of the UCL in that Zynga's conduct violated the ECPA (18 U.S.C. § 2510 *et seq.*), the SCA (18 U.S.C. § 2701 *et seq.*), Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), and the California Computer Crime Law (Cal. Penal Code § 502).

63. Zynga violated the fraudulent prong of the UCL by explicitly representing in its agreement with Facebook that it would not make users' personal information available to any third party. Zynga used those misrepresentations to induce users to submit to Zynga their personally-identifiable information. Zynga then knowingly transmitted that information to third parties without authorization.

64. Zynga violated the unfair prong of the UCL by gaining control over and divulging to third parties its users' PII without consent and under false pretenses.

65. Zynga's unfair or deceptive practices occurred primarily and substantially in California. Decisions concerning the retention and safeguarding the disclosure of user information were made in California, Zynga maintains all or a substantial part of its computer systems containing

user information in California, and the disclosure of its users' information took place primarily and substantially in California.

66. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seek an order of this Court permanently enjoining Zynga from continuing to engage in the unfair and unlawful conduct described herein. Plaintiff seek an order requiring Zynga to (1) immediately cease the unlawful practices stated in this Complaint; and (2) awarding Plaintiff and the Class reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

## COUNT IV
### (Violation of California's Computer Crime Law ("CCCL"), Cal. Penal Code § 502)

67. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

68. Zynga knowingly accessed and without permission used any data, computer, computer system, or computer network in order to execute a scheme or artifice to deceive and/or to wrongfully control or obtain money, property, or data in violation of Cal. Penal Code § 502(c)(1). Zynga did so by accessing and sharing with third parties the personal information of Plaintiff and Class members in order to deceive Zygna users and/or to wrongfully obtain money from third parties and to obtain more data from Zynga users.

69. Zynga knowingly accessed and without permission took, copied, or made use of Plaintiff's and Class members' personal information in violation of § 502(c)(2).

70. Zynga knowingly and without permission used or caused to be used computer services by impermissibly accessing, collecting, and transmitting Plaintiffs' and Class members' personal information in violation of § 502(c)(3).

71. Zynga knowingly and without permission provided or assisted in providing a means of accessing a computer, computer system, or computer network by creating a system that allowed advertisers to impermissibly access, collect, and transmit Plaintiff's and Class members' personal information in violation of § 502(c)(6).

72. Zynga knowingly and without permission accessed or caused to be accessed Plaintiff's and Class members' computers and/or computer networks by impermissibly divulging Plaintiff's and Class members' personal information to third parties in violation of § 502(c)(7).

-13-

CLASS ACTION COMPLAINT

73. Zynga knowingly and without permission introduced a computer contaminant, as defined in § 502(b)(10), by introducing computer instructions designed to record or transmit to third parties Plaintiff's and the Class's personally-identifiable information on Zynga's computer networks without the intent or permission of Plaintiff or the Class in violation of § 502(c)(8).

74. As a direct and proximate result of Zynga's violation of § 502, Zynga caused loss to Plaintiff and the Class members in an amount to be proven at trial. Plaintiff and the Class are entitled to the recovery of attorneys' fees pursuant to § 502(e).

75. Plaintiff and Class members have also suffered irreparable injury as a result of Zynga's unlawful conduct, including the collection and sharing of their personal information. Additionally, because the stolen information cannot be returned, the harm from the security breach is ongoing and compounding. Accordingly, Plaintiff and the Class have no adequate remedy at law, entitling them to injunctive relief.

## COUNT V

**(Violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*)**

76. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77. The Consumers Legal Remedies Act prohibits the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission of any material fact with intent that others rely upon such act in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby.

78. As described within, Zynga has engaged in deceptive practices, unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750, *et seq.*, to the detriment of Plaintiff and the Class.

79. Zynga, acting with knowledge, intentionally and unlawfully brought harm upon Plaintiff and the Class by deceptively inducing Plaintiff and the Class to register with Zynga, supply Zynga with personal and private information, and click on advertisements based upon deceptive and misleading representations that it would not disclose their personal or private information to third-parties. Specifically, Zynga violated Cal. Civ. Code § 1750 in at least the following respects:

a. In violation of § 1770(a)(5) by representing that goods or services have characteristics and benefits that they do not have;

b. In violation of § 1770(a)(14) by representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and

c. In violation of § 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

80. Plaintiff and the Class have suffered harm as a direct and proximate result of the Zynga's violations of law and wrongful conduct.

81. Under Cal. Civ. Code § 1780(a) & (b), Plaintiff and the Class seek injunctive relief requiring Zynga to cease and desist the illegal conduct described herein, and any other appropriate remedy for violations of the CLRA. For the sake of clarity, Plaintiff explicitly disclaims any claim for damages under the CLRA at this time.

## COUNT VI
### (Breach of Contract)

82. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

83. In order to offer gaming applications to Plaintiff and the Class, Facebook required Zynga to its terms and conditions governing third-party application developers (the "Agreement").

84. The Agreement is intended to protect Plaintiff and the Class and Plaintiff and the Class are third-party beneficiaries of the Agreement.

85. Plaintiff and the Class transmitted sensitive personally-identifiable information to Zynga in exchange for Zynga's implicit and explicit promise that it would not share that personal information with third parties, including but not limited to advertisers.

86. Zygna users pay for Zynga's services with their personal information. Zynga's users exchange something valuable—access to their personal information—for Zynga's services and Zygna's promise to safeguard that personal information pursuant to Zynga's Agreement with Facebook.

87. Zynga collects revenues in large part because the personal information submitted by its users increases the value of Zynga's advertising services and marketable data. Because Zynga has access to highly personal information about its users, Zynga's advertising platform is particularly attractive to advertisers and marketers who can and do use that personal information to deliver highly-targeted ads to Zynga's users. Similarly, because Zynga has access to highly personal information about its users, Zynga's data set of user information is particularly attractive to data gathering companies who can and do use that personal information to sell marketing services to other third parties. In this regard, Zynga's services are vehicles to acquire personal information about consumers in order to sell that personal information to third parties.

88. If not for the inherent and identifiable value of access to personal consumer information, Zynga would be much less profitable. Thus, its promises concerning the safeguarding of the personal information Zynga receives from its users in exchange for its services are vital to its business and its users.

89. Zynga materially breached its Agreement with Facebook, which Plaintiff and the Class were intended third-party beneficiaries of, through its unlawful conduct alleged herein, including its disclosure of Plaintiff's and the Class's personal information to third parties.

90. As a result of Zynga's misconduct and breach of the Agreement described herein, Plaintiff and the Class suffered injury.

### COUNT VII

### (Violation of Cal. Civ. Code §§ 1572 & 1573)

91. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

92. Cal. Civ. Code § 1572 provides in relevant part that actual fraud exists when a party to a contract suppresses "that which is true, by one having knowledge or belief of the fact" "with intent to deceive another party thereto, or to induce him to enter into the contract."

93. Cal. Civ. Code § 1573 provides in relevant part that constructive fraud exists "[i]n any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

94. Zynga violated § 1572 through its repeated and explicit false assertions that it would not share the identity of its users with third parties without consent, as described herein. Zynga further violated this section by suppressing its knowledge of this fact.

95. Additionally and/or alternatively, Zynga violated § 1573 by breaching its duty to protect its users' identities from third parties and gaining an advantage in doing so, by misleading its users to their prejudice, as described herein.

96. Plaintiff, on behalf of themselves and the Class, seek damages from Zynga, including but not limited to disgorgement of all proceeds Zynga obtained from its unlawful business practices.

## COUNT VIII

### (Unjust Enrichment (In the Alternative))

97. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

98. Plaintiff and the Class have conferred a benefit upon Zynga. Zynga has received and retained money belonging to Plaintiff and the Class as a result of sharing its users' personal information with its third parties without their consent, as described herein.

99. Zynga appreciates or has knowledge of said benefit.

100. Under principles of equity and good conscience, Zynga should not be permitted to retain money belonging to Plaintiff and the Class that it unjustly received as a result of its actions.

101. Plaintiff and the Class have suffered loss as a direct result of Zynga's conduct.

102. Plaintiff, on their own behalf and on behalf of the Class, seek the imposition of a constructive trust on and restitution of the proceeds of Zynga received as a result of its conduct described herein, as well as attorney's fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. Certify this case as a class action on behalf of the Class defined above, appoint Plaintiff Graf as class representative, and appoint her counsel as class co-counsel;

B. Declare that Zynga's actions, as described herein, violate the ECPA (18 U.S.C. § 2510 *et seq.*), the SCA (18 U.S.C. § 2701 *et seq.*), California Unfair Competition Law (Cal. Bus. &

Prof. Code § 17200, *et seq.*), the Computer Crime Law (Cal. Penal Code § 502), and the Consumer Legal Remedies Act (Cal. Bus. & Prof. Code § 1750), and constitute breach of contract, fraud, and unjust enrichment;

C. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, *inter alia*, an order prohibiting Zynga from engaging in the wrongful and unlawful acts described herein;

D. Disgorge Zynga of all revenue earned from its social gaming applications offered on Facebook during the class period;

E. Awarding damages, including statutory damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

F. Awarding all economic, monetary, actual, consequential, and compensatory damages caused Zynga's conduct, and if its conduct is proved willful, award Plaintiff and the Class exemplary damages;

G. Award restitution against Zynga for all money to which Plaintiff and the Class are entitled in equity;

H. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

I. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

J. Awarding such other and further relief as equity and justice may require.

Dated: October 18, 2010

Respectfully submitted,
NASSIRI & JUNG LLP

Kassra P. Nassiri
Attorneys for Plaintiff

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 18, 2010

Respectfully submitted,
NASSIRI & JUNG LLP

Kassra P. Nassiri
Attorneys for Plaintiff