IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Zynga Privacy Litigation | NO. C 10-04680 JW |
| | **ORDER GRANTING DEFENDANT'S MOTION TO STRIKE; GRANTING DEFENDANT'S MOTION TO DISMISS** |

Presently before the Court are Defendant's Motion to Strike[1] and Defendant's Motion to Dismiss.[2] The Court conducted a hearing on October 17, 2011. Based on the papers submitted to date and oral argument, the Court GRANTS Defendant's Motion to Strike and GRANTS Defendant's Motion to Dismiss.

**A.    Background**

A detailed summary of the factual background of this case is provided in the Court's June 15, 2011 Order.[3] The Court reviews the procedural history relevant to the present Motion.

On June 15, 2011, the Court granted in part and denied in part Defendant's previous motion to dismiss. (See June 15 Order.) On July 15, 2011, Plaintiffs filed an Amended Complaint pursuant to the Court's June 15 Order.[4]

---

[1] (Defendant Zynga Inc.'s Notice of Motion and Motion to Strike the Corrected Second Amended Consolidated Class Action Complaint's Causes of Action Already Dismissed with Prejudice, hereafter, "Motion to Strike," Docket Item No. 71.)

[2] (Defendant Zynga Inc.'s Notice of Motion and Motion to Dismiss Corrected Second Amended Consolidated Class Action Complaint, hereafter, "Motion to Dismiss," Docket Item No. 72.)

[3] (Order Granting in part and Denying in part Defendant's Motion to Dismiss, hereafter, "June 15 Order," Docket Item No. 64.)

[4] (Corrected Second Amended Consolidated Class Action Complaint, hereafter, "SAC," Docket Item No. 67.)

**B.     Standards**

  **1.     Motion to Strike**

Pursuant to Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Ninth Circuit has held that "[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983) (citation omitted).

However, "[m]otions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Accordingly, such motions should be denied unless the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit. See S.E.C. v. Sands, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995); LeDuc v. Kentucky Cent. Life Ins. Co., 814 F. Supp. 820, 830 (N.D. Cal. 1992). When considering a motion to strike, the court "must view the pleadings in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Securities Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

  **2.     Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

2

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

**C.  Discussion**

  **1.  Motion to Strike**

Defendant moves to strike from the Second Amended Complaint the Third, Fourth and Fifth Causes of Action, on the ground that although the Court has already dismissed them with prejudice, Plaintiffs "substantially amended the language of those causes of action" when re-alleging them in the Second Amended Complaint.[5] (Motion to Strike at 2-3.) Plaintiffs respond that these causes of action should not be stricken, because they "assert those claims for the first time on behalf of a new plaintiff . . . and a new Subclass" in the Second Amended Complaint, and as to the original Plaintiffs and Class "merely state [the] claims . . . to preserve them, for appellate purposes."[6]

In the context of 12(f) motions, the type of "impertinent matter" that may properly be struck from a complaint by a district court "consists of statements that do not pertain, and are not necessary, to the issues in question." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010) (citation omitted). Where a claim is dismissed with prejudice, an attempt to replead that claim with "supplemental allegations" in an amended complaint is "gratuitous," and a district court

---

[5] The causes of action at issue were brought under California's Unfair Competition Law, California's Consumer Legal Remedies Act and the Computer Fraud and Abuse Act. (See June 15 Order at 6-7.) In the June 15 Order, the Court dismissed each of these causes of action "with prejudice." (Id.)

[6] (Plaintiffs' Opposition to Zynga's Motion to Strike the Corrected Second Amended Consolidated Class Action Complaint's Causes of Action Already Dismissed with Prejudice at 2-3, Docket Item No. 76.) The Court observes that Plaintiffs did not seek leave to amend their previous Amended Complaint so as to add the new Plaintiff named in the Second Amended Complaint.

3

acts "within its discretion to ignore it." Crichton v. Golden Rule Ins. Co., 576 F.3d 392, 395-96 (7th Cir. 2009).

Here, the Court explicitly dismissed the causes of action in question "with prejudice." (June 15 Order at 6-7.) Nonetheless, Plaintiffs replead these causes of action, with supplemental allegations, in their Second Amended Complaint, on the ground that these causes of action have "not been ruled upon as to the Subclass." (See, e.g., SAC at 24.) However, since the Court has already dismissed these causes of action with prejudice as to the class in its entirety, it necessarily follows that they have also been dismissed as to any subset of that class (e.g. the putative "Subclass"). Because these causes of action have been dismissed with prejudice in their entirety, they do not pertain to the remaining issues at question in this case. Whittlestone, 618 F.3d at 974. Thus, the Court finds good cause to strike these causes of action.[7]

Accordingly, the Court GRANTS Defendant's Motion to Strike.

**2. Motion to Dismiss**

Because this case involves similar claims, and because Defendant's Motion to Dismiss raises the same defects in Plaintiffs' Second Amended Complaint as were raised by the similar Motion in In re Facebook Privacy Litigation, the Court reviews its ruling in that case as relevant to resolving the current Motion.

On November 22, 2011, the Court issued an Order granting Facebook's Motion to Dismiss in In re Facebook Privacy Litigation.[8] In that Order, the Court found that the plaintiffs in that case: (1) failed to state a claim under the Stored Communications Act, because they were alleging that

---

[7] Plaintiffs may retain these causes of action, as they were pleaded in the earlier First Amended Complaint, for purposes of appeal. See, e.g., Miletak v. Allstate Ins. Co., No. C 06-03778 JW, 2007 WL 7061350, at *4 (N.D. Cal. July 18, 2007) (explaining that a plaintiff "must reallege even dismissed causes of action in order to preserve them for appeal" under Ninth Circuit caselaw).

[8] (See Order Granting Defendant's Motion to Dismiss with Prejudice, hereafter, "Facebook Order," Docket Item No. 106 in No. C 10-2389 JW.)

4

Facebook was acting as an "RCS provider"[9] in relation to the communications at issue, but that argument relied on the mutually inconsistent propositions that (a) the communications were addressed to advertisers and (b) the communications consisted of "data" which was sent to Facebook for "processing or storage"; (2) failed to state a claim under Cal. Penal Code § 502(c)(8), because they alleged that the transmissions at issue were caused by a "standard web browser function," rather than by a "contaminant" introduced to the plaintiffs' computers by Facebook to "usurp" the "normal operations" of those computers; (3) failed to state a claim for breach of contract, because they failed to show that they suffered "appreciable and actual damage"; and (4) failed to state a claim under Cal. Civ. Code §§ 1572 and 1573, because they failed to show that they had suffered non-speculative damages. (Facebook Order at 4-9.)

Thus, consistent with its findings in In re Facebook Privacy Litigation, with respect to Defendant's Motion to Dismiss in this case, the Court finds that Plaintiffs' claims under the Wiretap Act and Stored Communications Act fail. Plaintiffs' allegations as to both of these claims rest on their contention that Defendant "was acting as an RCS provider at the time it non-consensually divulged the contents of Plaintiffs' . . . communications."[10] However, Plaintiffs also allege that the "electronic communications" at issue in this case are "transmission[s]" between "the user and at least Facebook" which enables the user "to play a Zynga gaming app."[11] Thus, consistent with In re Facebook Privacy Litigation, the Court finds that Plaintiffs' allegations rely on the following mutually inconsistent propositions: (1) the communications were addressed to "at least Facebook,"

---

[9] As the Ninth Circuit has explained, an "electronic communication service" ("ECS") is statutorily defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." Quon v. Arch Wireless Operating Co., Inc., 529 F.3d 892, 900 (9th Cir. 2008) (citing § 2510(15)). By contrast, a "remote computing service" ("RCS") is statutorily defined as "the provision to the public of computer storage or processing services by means of an electronic communications system." Id. (citing § 2711(2)).

[10] (Plaintiffs' Opposition to Zynga's Motion to Dismiss Corrected Second Amended Consolidated Class Action Complaint at 4, hereafter, "Opp'n," Docket Item No. 77.)

[11] (SAC ¶ 43; see also Opp'n at 5 (characterizing Plaintiffs' allegations about the electronic communications at issue as follows: "when [Plaintiffs] use a Zynga gaming app, they transmit electronic communications through the [I]nternet to at least Facebook to enable [themselves] to play and interact with a Zynga gaming app").)

5

and were for the purpose of enabling the user to play a gaming app; and (2) the communications consisted of "data" sent to Defendant for "processing or storage."[12] Accordingly, the Court DISMISSES Plaintiffs' claims under the Wiretap Act and Stored Communications Act.

In addition, Plaintiffs state two claims which are significantly different from claims stated by the plaintiffs in In re Facebook Privacy Litigation: (1) a claim for breach of contract; and (2) a claim for breach of the covenant of good faith and fair dealing. The Court considers each of these claims in turn.

### a. Breach of Contract

At issue is whether Plaintiffs state a claim for breach of contract.

In its June 15 Order, the Court found that Plaintiffs' claim for breach of contract failed "because California law requires a showing of 'appreciable and actual damage' to assert a breach of contract claim, but Plaintiffs only allege that they have 'suffered and will continue to suffer damages and losses.'" (June 15 Order at 4-5.) Accordingly, the Court granted Defendant's motion to dismiss Plaintiffs' cause of action for breach of contract without prejudice, with leave to amend "to allege specific facts showing appreciable and actual damages in support of their claim." (Id. at 7.)

Here, in support of their breach of contract claim, Plaintiffs allege that they suffered "actual and appreciable damages" as follows:

> [Plaintiffs'] personally identifiable information . . . has ascertainable value. . . . [Plaintiffs'] actual and appreciable damages take the form of the value of their [personally identifiable information] that [Defendant] wrongfully shared with its advertisers and other third parties . . . [In addition, the] actual and appreciable damages for Subclass members take the form of the monies they paid for [Defendant's] virtual currency.

(SAC ¶ 151.)

Thus, Plaintiffs' breach of contract claim relies on two allegations: (1) the allegation that, as to the Class as a whole, Plaintiffs suffered "appreciable and actual damages" in the form of the loss of the "value" of their personally identifiable information; and (2) the allegation that, as to the

---

[12] Further, the Court finds that Plaintiffs' claims under the Wiretap Act fail for the same reasons that the plaintiffs' Wiretap Act claims failed in In re Facebook Privacy Litigation, as explained in the Court's May 12, 2011 Order in that case. (See Order Granting in part and Denying in part Defendant's Motion to Dismiss, Docket Item No. 91 in No. C 10-2389 JW.)

6

Subclass only, Plaintiffs suffered "appreciable and actual damages" in the "form of the monies they paid" for Defendant's "virtual currency."[13] Upon review, however, the Court finds that neither of these allegations support Plaintiffs' breach of contract claim. First, consistent with its findings in In re Facebook Privacy Litigation, the Court finds that Plaintiffs' theory that their personally identifiable information has "value" that they have "lost" lacks legal support, and thus does not constitute a showing of "appreciable and actual damages" in the context of Plaintiffs' breach of contract claim. (See Facebook Order at 7-9.) Second, as to the Subclass, Plaintiffs do not allege that members of the Subclass paid money for goods which Defendant failed to deliver. Plaintiffs merely allege that members of the Subclass purchased "virtual goods" from Defendant. (SAC ¶ 77.) However, Plaintiffs do not allege that Defendant failed to give members of the Subclass the "virtual goods" for which they paid money. Instead, as discussed above, the "breach of contract" alleged to have occurred here involved "divulging, transmitting, renting, selling, [and] otherwise providing [Plaintiffs'] personally identifiable information to third parties in breach of the terms of its Agreement."[14] (Id. ¶ 150.) Thus, Plaintiffs' allegation that members of the Subclass paid "monies" for Defendant's "virtual currency" has no connection to Plaintiffs' allegations regarding the "contract" not to divulge their personally identifiable information. Accordingly, the Court finds that

---

[13] Plaintiffs allege that they had to "affirmatively assent and agree to be bound by [Defendant's] Privacy Policy" (the "Agreement") in order "to register for and use [Defendant's] gaming apps," and that the Agreement constitutes "a valid and enforceable contract between Plaintiffs and the Class on the one hand, and [Defendant] on the other." (SAC ¶¶ 144-45.) Further, Plaintiffs allege that Defendant breached the Agreement by "divulging, transmitting, renting, selling, [and] otherwise providing [Plaintiffs'] personally identifiable information to third parties." (Id. ¶ 150.) Because the Court finds that Plaintiffs fail to adequately allege the damages element of their breach of contract claim, the Court does not reach any other issues in regard to this claim.

[14] Although Plaintiffs' Second Amended Complaint is confused as to this point, it appears that Plaintiffs are attempting to conflate two possible theories of breach of contract: (1) the theory that Defendant had a "contract" with Plaintiffs not to disclose their personally identifiable information to third parties; and (2) the theory that Defendant had a separate contract with the Subclass to sell them "virtual goods." As to the first theory, as discussed above, Plaintiffs fail to state a claim because they cannot show that the loss of the "value" of their personally identifiable information constitutes damages for purposes of breach of contract. As to the second theory, Plaintiffs fail to state a claim because they do not allege that Defendant *breached* the contract in question, i.e., they do not allege that Defendant failed to sell them the "virtual goods" for which they had paid. (See Facebook Order at 7 (explaining that, under California law, a plaintiff must plead "defendant's breach" of a contract in order to plead a breach of contract claim).)

7

1 Plaintiffs have failed to show "appreciable and actual damages *in support of* [their] claim" for
2 breach of contract. (See June 15 Order at 7) (emphasis added).
3 Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' cause of action
4 for breach of contract.

### b. Breach of the Covenant of Good Faith and Fair Dealing

6 At issue is whether Plaintiffs state a claim for breach of the covenant of good faith and fair
7 dealing.[15]
8 If a plaintiff's allegations of the breach of the covenant of good faith and fair dealing "do not
9 go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek
10 the same damages or other relief already claimed in a companion contract cause of action, they may
11 be disregarded as superfluous as no additional claim is actually stated." Bionghi v. Met. Water Dist.
12 of So. Cal., 70 Cal. App. 4th 1358, 1370 (Cal. Ct. App. 1999).
13 Here, Plaintiffs state a cause of action for breach of contract by alleging that Defendant
14 breached its contract with Plaintiffs "by divulging, transmitting, renting, selling, [and] otherwise
15 providing their personally identifiable information to third parties in breach of the terms of its
16 Agreement." (SAC ¶ 150.) Similarly, Plaintiffs state a cause of action for breach of the covenant of
17 good faith and fair dealing by alleging that Defendant "violated its promises and divulged its users'
18 personally identifiable information to third parties without their authorization or consent." (Id. ¶
19 161.) Plaintiffs do not seek separate damages or different relief for these two causes of action.
20 Thus, because Plaintiffs' cause of action for breach of the covenant of good faith and fair dealing
21 relies on the same alleged acts, and seeks the same relief, as Plaintiffs' cause of action for breach of
22 contract, it "may be disregarded as superfluous." Bionghi, 70 Cal. App. 4th at 1370.
23 Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' cause of action
24 for breach of the covenant of good faith and fair dealing.

---

[15] The Court observes that Plaintiffs added a cause of action for breach of the covenant of good faith and fair dealing to their Second Amended Complaint without being granted leave to amend as to this cause of action. Nonetheless, the Court addresses the merits of this cause of action so as to arrive at a final resolution of Plaintiffs' claims.

**D.     Conclusion**

The Court GRANTS Defendant's Motion to Strike and GRANTS Defendant's Motion to Dismiss.

Because the Court has already granted Plaintiffs leave to amend to allege specific facts as to the claims discussed above, and because the Court finds that Plaintiffs continue to fail to state a claim as to each of the claims, the Court finds that further amendment would be futile. Accordingly, the Second Amended Complaint is dismissed with prejudice.

Dated: November 22, 2011

JAMES WARE
United States District Chief Judge

9

**United States District Court**
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Adam Gutride adam@gutridesafier.com
Adam J. Levitt levitt@whafh.com
Andrew N. Friedman afriedman@cohenmilstein.com
Benjamin Harris Richman brichman@edelson.com
Charles Hyunchul Jung cjung@nassiri-jung.com
David R. Buchanan Dbuchanan@SeegerWeiss.com
Francis M. Gregorek gregorek@whafh.com
Jeff S. Westerman jwesterman@milberg.com
Joel E Elkins jelkins@weisslurie.com
Jonathan Shub jshub@seegerweiss.com
Jordan L. Lurie jlurie@weisslurie.com
Juli E. Farris jfarris@kellerrohrback.com
Kassra Powell Nassiri knassiri@nassiri-jung.com
Leigh Anne Parker lparker@weisslurie.com
Mark Adam Griffin mgriffin@kellerrohrback.com
Matthew Dean Brown mbrown@cooley.com
Michael J. Boni mboni@bonizack.com
Michael James Aschenbrener mja@aschenbrenerlaw.com
Michael Patrick Dillingham mdillingham@nassiri-jung.com
Michael Robert Reese michael@reeserichman.com
Philip Scott Friedman psf@consumerlawhelp.com
Richard L. Seabolt rlseabolt@duanemorris.com
Robert Joseph Drexler rdrexler@kpalawyers.com
Sabrina S. Kim skim@milberg.com
Seth Adam Safier seth@gutridesafier.com

**Dated:  November 22, 2011**                    **Richard W. Wieking, Clerk**

**By:      /s/ JW Chambers**
          **Susan Imbriani**
          **Courtroom Deputy**